**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────────

**INDIAN LOOKOUT COUNTRY CLUB, INC.,**
**and HARLEY RENDEZVOUS CLASSIC, INC.,**

                       **Plaintiffs,**

**v.**

**JOHN J. FRAME, individually and in his official**
**capacity as the director of the Schenectady**
**County Public Health Services**
**Environmental Health Unit, and the**
**COUNTY OF SCHENECTADY,**

                       **Defendants.**

───────────────────────────────────

**1:16-cv-827 (BKS/DJS)**

**APPEARANCES:**

*For Plaintiffs:*
**Matthew J. Kelly**
Roemer Wallens Law Gold & Mineaux, LLP
13 Columbia Circle
Albany, NY 12203

*For Defendants:*
**Steven V. DeBraccio**
**Patrick J. Saccocio**
Parisi, Coan & Saccocio, PLLC
376 Broadway
Schenectady, NY 12305

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

This litigation arises from the denial of an application for a mass gathering permit to hold

a music festival, known as "Camp Bisco," at Plaintiffs' outdoor venue in Duanesburg, New

York.  Plaintiffs Indian Lookout Country Club, Inc. ("Indian Lookout") and Harley Rendezvous

Classic, Inc. bring various causes of action under 42 U.S.C. § 1983 and New York state law

against Defendants John Frame, Director of the Schenectady County Public Health Services

Environmental Health Unit, and the County of Schenectady.  Plaintiffs allege causes of actions

for deprivations of substantive and procedural due process, as well as equal protection, in

violation of the Fourteenth Amendment, and for violation of New York law based on defendants'

alleged arbitrary and capricious actions.  (Dkt. No. 1).  Although Plaintiffs have not identified

First Amendment retaliation as a cause of action, the parties proceed under the assumption that

the Complaint means to state a cause of action for First Amendment retaliation.  (Dkt. No. 1, ¶

29; Dkt. No. 32-5, at 10–15).  Accordingly, the Court construes Plaintiffs' claims as including a

cause of action for First Amendment retaliation.

Defendants now move for judgment on the pleadings, seeking dismissal of each of the

causes of action under Federal Rule of Civil Procedure 12(c), (Dkt. No. 32), and Plaintiffs have

opposed the motion, (Dkt. No. 34).  For the reasons that follow, Defendants' motion is granted.

## II.    BACKGROUND[1]

### A.    2015 Mass Gathering Permit Application

"Camp Bisco" is a music festival that was first held at Plaintiffs' outdoor venue, Indian

Lookout Country Club, in 2008.  (Dkt. No. 1, ¶ 20).  The festival was held there every year

between 2008 and 2013, was not held at all in 2014, and in 2015, was organized for the first time

by a new promoter, "Lunar Pursuit, LLC" ("Lunar Pursuit").  (*Id.*).  Lunar Pursuit "was required

to comply with the mass gathering law and regulations of New York State and [to] prepare the

---

[1] For purposes of this decision, the facts are taken from the Complaint and assumed to be true.  *See Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011); *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (explaining that, when reviewing a Rule 12(c) motion, a court must accept "the complaint's factual allegations as true and draw[ ] all reasonable inferences in the plaintiff's favor").

application for permit," which was "comprehensive and voluminous." (*Id.* ¶ 21). Although Lunar Pursuit had received approval from various state agencies, (*id.* ¶ 22), and although its application was "consistent with those plans approved" for Camp Bisco in earlier years, (*id.* ¶ 24), the County of Schenectady denied Lunar Pursuit's application for a mass gathering permit on April 8, 2015, (*id.* ¶ 23). Plaintiffs allege that they are "third party beneficiaries of the application for the permit" as a result of a contract under which Indian Lookout agreed to rent its premises to Lunar Pursuit for the event. (*id.* ¶¶ 7, 14; Dkt. No. 1-2).[2]

Plaintiffs allege that "the County of Schenectady is operated by members of the Democratic Party" and that "the policy making agents of the County of Schenectady in conformance with the desires of the Schenectady County Democratic Party sought to injure the plaintiff corporations wholly due to the fact that the President of those corporations is Francis Potter." (*Id.* ¶ 29). Accordingly, "the denial by the County of Schenectady was meant to punish [Mr. Potter] for his long-standing and well-acknowledged public actions on behalf of the Republican Party in the County of Schenectady and in opposition to the Democratic Party in the County of Schenectady." (*Id.* ¶ 28). Plaintiffs allege that the denial of Lunar Pursuit's permit application was "meant to deny Mr. Potter his First Amendment rights and Free Speech guarantees of the Constitution." (*Id.* ¶ 29).

Furthermore, Plaintiffs allege that the permit application denial was "meant to deprive the plaintiffs of its [sic] rights to equal protection" because "defendants did discriminate against the plaintiffs and did treat it differently from other similarly situated applicants . . . and there is no rational basis for the difference in treatment." (*Id.* ¶ 31). In support of this claim, Plaintiffs allege that "permit applications brought to obtain the right to proceed with Camp Bisco in prior

---

[2] Neither party has addressed whether Plaintiffs have the right to assert constitutional violations arising out of the denial of a permit to a third party.

years were approved." (*Id.* ¶ 32). In previous years, "no requirement was made for fifty police officers to patrol the grounds and insurance coverage of $1,000,000 primary and $2,000,000 excess was deemed acceptable." (*Id.* ¶ 33). "The 2015 application was substantially similar, but was denied. The denial was issued far too late for the plaintiff to address the concerns of the County and no opportunity to do so was even provided. No hearing was held and no opportunity to obtain data to satisfy the insurance requirements and police staffing requirements was provided." (*Id.* ¶ 32). Plaintiffs therefore conclude that the "actions of the defendants as aforesaid constituted a denial of equal protection to the plaintiffs based upon the fact that prior applications were accepted by the County without the additional requirements thereto." (*Id.* ¶ 44).

**B.      The Article 78 Proceeding[3]**

On May 22, 2015, after Defendants denied Lunar Pursuit's application for a mass gathering permit, Plaintiffs commenced an Article 78 action in New York State Supreme Court, County of Schenectady, requesting that the court determine "that the denial was arbitrary and capricious and order the issuance of the mass gathering permit." (Dkt. No. 32-2, at 4). The Supreme Court, Schenectady County noted that the denial letter "identified that the application failed to provide adequate transportation and emergency operating plans; a reasonable amount of liability insurance to protect the County's interests in light of the significant hazards and risks associated with the event; and the failure of the applicant . . . to demonstrate it has the financial

---

[3] The Court takes judicial notice of the documents filed in the state proceeding under N.Y. C.P.L.R. Article 78, "not for the truth of the matters asserted in [that] litigation, but rather to establish the fact[s] of [the] litigation." *Global Network Comm'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); *see also McGowan v. Schuck*, No. 2016 U.S. Dist. LEXIS 120367, at *18 n.7, 2016 WL 4611249, at *6 n.7 (W.D.N.Y. Sept. 6, 2016) (taking judicial notice of Article 78 proceeding); *Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 38 (E.D.N.Y. 2011) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*.").

resources to execute its gathering plan." (Dkt. No. 32-3, at 2). The court determined that Defendants had "set forth a rational basis upon which the mass gathering permit was denied," and denied the Article 78 petition on October 28, 2015. (*Id.* at 3). Plaintiffs subsequently moved to reargue and renew the petition, which was denied on February 2, 2016. (Dkt. No. 32-4). Plaintiffs appealed the judgment dismissing the petition and the order denying the motion, and on April 20, 2017, the New York Appellate Division dismissed the appeal as moot. *In the Matter of Lunar Pursuit, LLC v. Frame*, 149 A.D.3d 1398 (3d Dept. 2017).

## III.    STANDARD OF REVIEW

The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings. *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 193 (2d Cir. 2015). "To survive a Rule 12(c) motion, [plaintiffs'] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (internal quotation marks omitted). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See E.E.O.C. v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When deciding a motion to dismiss, the Court's review is generally limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). For purposes of this decision, the facts are

taken from the Complaint, (Dkt. No. 1), and assumed to be true, *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011), unless contradicted by documents attached to the Complaint or incorporated by reference therein. *See Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 222 (2d Cir. 2004) (rejecting allegations that were "belied" by letters attached to the complaint); *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 472 (S.D.N.Y. 2005) (stating that "this Court need not credit conclusory allegations that are belied by more specific allegations or the documents incorporated in the Complaint"). Here, the Court has also considered exhibits attached to the Complaint on which Plaintiff has relied.[4] *See Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 221–22 (N.D.N.Y. 2014).

The Court notes that Plaintiff has attached numerous affidavits and assorted discovery responses to its opposition papers that the Court has not reviewed. (Dkt. No. 34). The Complaint does not incorporate these attached materials by reference and the attachments are not public records or prior filings of which the Court may take judicial notice. *See Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 313 n.7 (S.D.N.Y. 2015) ("The Court may take judicial notice of pleadings filed in other cases in deciding a motion to dismiss without converting that motion into a motion for summary judgment."). "When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000). The same principle applies to Rule 12(c) motions. *See Patell Indus. Mach. Co. v. Toyoda Mach. U.S.A.*, No. 93-CV-1572 (FJS), 1997 U.S. Dist. LEXIS 306, at *5, 1997 WL 10972, at *2 (N.D.N.Y. Jan. 9, 1997) (explaining that, "[u]nder Fed. R. Civ. P. 12(c), the Court must not consider

---

[4] The Court notes that portions of the permit application attached to the complaint are indecipherable. (*See* Dkt. No. 1-5 at 3–7, 35–45.)

material presented outside the pleadings" without first converting to a motion for summary judgment). "Whether to convert the motion is in the District Court's discretion." *Vested Bus. Brokers, Ltd. v. County of Suffolk*, No. 16-CV-4945 (JMA)(SIL), 2017 U.S. Dist. LEXIS 150197, at *8, 2017 WL 4122616, at *3 (E.D.N.Y. Sept. 15, 2017). The Court declines to exercise its discretion to convert the motion into one for summary judgment, and accordingly, will not consider the affidavits or other materials presented to the Court beyond the pleadings and materials attached thereto in ruling upon the merits of Defendant's Rule 12(c) motion.

## IV.    DISCUSSION

### A.    Due Process

The Due Process Clause of the Fourteenth Amendment contains both a procedural component and a substantive component. *Zinermon v. Burch,* 494 U.S. 113, 125 (1990). The substantive component "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). The procedural component, on the other hand, applies where there is an alleged deprivation by government action of a constitutionally protected interest without sufficient procedural safeguards, such as notice and a hearing. *Id.* Review of a procedural due process question involves a "two-step inquiry"; the Court "must determine (1) whether [the plaintiff] possessed a liberty or property interest and, if so, (2) what process he was due before he could be deprived of that interest." *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). To succeed on a substantive due process claim, a plaintiff must show that he "had a valid property interest, and defendants infringed on that interest in a constitutionally arbitrary manner," i.e., by taking an action "that shocks the conscience." *Rosato v. Town of Yorktown*, No. 13-cv-4069, 2014 U.S. Dist. LEXIS 19043, at *14, 2014 WL 521577, at *5 (S.D.N.Y. Jan. 27, 2014).

"When an unsuccessful applicant for a governmental permit claims that an official or regulatory body has violated due process, the framework for evaluating the claims is the well-developed property interest analysis."  *Walz v. Town of Smithtown*, 46 F.3d 162, 168 (2d Cir. 1995).  Thus, "[t]o state a procedural or substantive due process claim based on the denial of a special use permit, plaintiffs must first establish that they had a constitutionally protected property interest in the permit."  *Michael's Rest. & Sports Bar, Inc. v. Vill. of Fishkill*, No. 13 CV 8392 (VB), 2014 U.S. Dist. LEXIS 113294, at *4, 2014 WL 3887200, at *2 (S.D.N.Y. June 16, 2014) (citing *Ciambriello*, 292 F.3d at 313; *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999)); *Hampton Bays Connections, Inc. v. Duffy*, 127 F. Supp. 2d 364, 377 (E.D.N.Y. 2001) ("[I]n order to allege a property interest sufficient to support a substantive due process claim, the plaintiff must allege that it had a valid property interest to the benefit in question.").

"The focus of this analysis is on the nature of the applicant's interest in the approval being sought, specifically whether the applicant has a clear entitlement to the approval sought from the government official."  *Walz*, 46 F.3d at 168.  This analysis "focuses on the extent to which the deciding authority may exercise discretion in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision."  *Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir. 1995).  "Therefore, this Court, in applying the entitlement test, looks to 'existing rules or understandings that stem from an independent source such as state law to determine whether a claimed property right rises to the level of a right entitled to protection under the substantive due process doctrine.'"  *545 Halsey Lane Properties, LLC v. Town of Southampton*, 39 F. Supp. 3d 326, 339 (E.D.N.Y. 2014) (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 130 (2d Cir. 1998)).  "[I]f state law makes the pertinent official action discretionary, one's interest in a favorable decision does not rise to the level of a

property right entitled to procedural due process protection." *R.R. Vill. Ass'n, Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1201–1202 (2d Cir. 1987). The Second Circuit has defined "discretion" liberally—even where "objective observers would estimate that the probability of [obtaining the relief sought] was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federal protected property interest." *RRI Realty Corp. v. Incorporated Village of Southampton*, 870 F.2d 911, 918 (2d. Cir. 1989). Thus, a Plaintiff has a protected property interest in a permit if "the issuing authority lacks discretion to deny the permit," *Natale*, 170 F.3d at 263, "or if the discretion of the issuing agency was so narrowly circumscribed that approval of a proper application was virtually assured," *DLC Mgmt. Corp.*, 163 F.3d at 132.

In this case, Lunar Pursuit's application was governed by the New York Sanitary Code regulations which implement New York's Mass Gathering Law. Section 7-4.2(a) states that "[n]o person shall hold or promote . . . a mass gathering unless a permit has been issued for the gathering by the permit-issuing official." N.Y. Comp. Codes R. & Regs. tit. 10, § 7-4.2(a). The Second Circuit has held that the Mass Gathering Law and Sanitary Code provides the issuing authority with "an objective test for satisfaction of the conditions required to obtain a mass gathering permit," while also allowing the issuing authority "to exercise his or her discretion in the first instance to determine if a risk of life or health is presented, and if so, whether that risk can be rendered reasonable." *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 180–81 (2d Cir. 2006) (upholding constitutionality of New York's Mass Gathering Law). And, although the Mass Gathering Law does not allow "an official to deny a permit to an applicant who has otherwise satisfied the strictures of the statutory and regulatory requirements," *id.* at 183, it provides discretion to the issuing authority in determining what requirements are reasonably

necessary. *See, e.g.*, N.Y. Comp. Codes R. & Regs. tit. 10, §§ 7-4.8 ("The applicant shall provide evidence of . . . insurance in such form and amount as shall be determined by the permit-issuing official to be reasonable in relation to the risks and hazards involved and in relation to or in any way arising out of the proposed activity . . . ."); 7-4.7(d)(1) & (2) (requiring "detailed plans for parking facilities" and "transportation arrangements from noncontiguous parking facilities to the site" sufficient to serve "all reasonable anticipated requirements"). Furthermore, the Mass Gathering Law provides the issuing authority with wide discretion to issue variances or waivers "where there are practical difficulties or hardships in immediate compliance with the provision." N.Y. Comp. Codes R. & Regs. tit. 10, § 7-4.4; *see Cunney v. Bd. of Trs. of Grand View*, 56 F. Supp. 3d 470, 500–501 (S.D.N.Y. 2014) (finding that where statute permitted zoning board "discretion to grant a variance in the face of strict non-conformity," plaintiff lacked a property interest due to the "degree of discretion that could have been applied to his application"). Thus, nothing in the statute suggests that the issuing authority's discretion is "so narrowly circumscribed" to the degree that Lunar Pursuit's application was "virtually assured" to be approved. *DLC Mgmt.*, 163 F.3d at 132. Plaintiffs have not plausibly alleged that they have a protected property interest in a mass gathering permit, and accordingly, Plaintiffs' due process claims are dismissed.[5]

---

[5] In any event, the Complaint fails to allege conduct that satisfies the secondary requirements necessary to adequately state a procedural or substantive due process claim. Plaintiffs fail to adequately state a claim for denial of procedural due process because they availed themselves of a meaningful post-deprivation remedy in the Article 78 proceeding. *See Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996) ("An Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit."); *Michael's Rest. & Sports Bar, Inc. v. Vill. of Fishkill*, No. 13 CV 8392 VB, 2014 U.S. Dist. LEXIS 113294, at *6 n.2, 2014 WL 3887200, at *2 n.2 (S.D.N.Y. June 16, 2014). Nor do Plaintiffs adequately state a claim for denial of substantive due process, as the complaint does not plausibly allege conduct so outrageously arbitrary so as to constitute a gross abuse of government authority. *See Wantanabe Realty Corp. v. City of New York*, 315 F. Supp. 2d 375, 392 (S.D.N.Y. 2003) (explaining that violations of "state laws and regulations alone" are insufficient to state a substantive due process claims, and that such claims

B.    **First Amendment**

Plaintiffs allege that Defendants denied Lunar Pursuit's mass gathering permit application "to punish" Francis Potter for exercise of his First Amendment rights, as he has taken "long-standing and well-acknowledged public actions on behalf of the Republican Party in the County of Schenectady." (Dkt. No. 1, ¶ 28). Accordingly, Plaintiffs claim that "the actions of the County and the defendants hereto were meant to deny Mr. Potter his First Amendment rights and Free Speech Guarantees of the Constitution." (*Id.* ¶ 29). Defendants argue that Plaintiff's claims must fail because "plaintiffs merely conclusorily allege that defendants intentionally meant to deprive plaintiffs of their rights without any supporting allegations," while identifying "no interactions with defendants where it was suggestion that the decision [to deny Lunar Pursuit's application] was politically motivated," (Dkt. No. 32-5, at 11). The Court agrees with Defendants.

At the outset, Defendants assume, and the Court will assume as well, that Plaintiffs sought to allege a First Amendment retaliation claim.[6] "To show retaliation in violation of the First Amendment, a 'plaintiff must prove: (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right.'" *Mental Disability Law Clinic, Touro Law Ctr. v. Hogan*, 519 F. App'x 714, 717 (2d Cir. 2013) (quoting *Curley v. Village of Suffern,* 268 F.3d 65, 73 (2d Cir. 2001)). "Chilled speech, however, is not necessary if the plaintiff can establish that he suffered some other 'concrete

---

are "made out only where the defendant's conduct 'transgresses the "outer limit" of legitimate governmental action'" (quoting *Harlen Assocs.*, 273 F.3d at 505)).

[6] Plaintiffs have not alleged that the permit denial was based upon the content of the speech at the mass gathering. *Cf. Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 193 (2d Cir.2006) (noting that the application of a facially neutral law so as to discriminate against certain speakers or ideas violate[s] the First Amendment).

harm.'"  *C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 3d 307, 314 (E.D.N.Y. 2016)

(quoting *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013)).

 The Complaint alleges the following facts regarding alleged political animus: (1) "the

County of Schenectady is operated by members of the Democratic Party," (Dkt. No. 1, ¶ 29); (2)

"the principal of the plaintiff corporations [has performed] long-standing and well-acknowledged

public actions on behalf of the Republican Party . . . and in opposition to the Democratic Party,"

(*id.* ¶ 28); and (3) "the policy making agents of the County of Schenectady in conformance with

the desires of the Schenectady County Democratic Party sought to injure the plaintiff

corporations wholly due to the fact that the President of those corporations is Francis Potter," (*id.*

¶ 29); (4) "the actions of the defendants as aforesaid were in violation of those rights," (*id.*

¶ 30).[7]  At the same time, the Complaint alleges that permits were previously granted on multiple

occasions, permitting Camp Bisco to be held at the Plaintiff Indian Lookout Country Club, Inc.

from 2008 through 2013.  (Dkt. No. 1, ¶¶ 16, 20, 24).

 As a preliminary matter, Defendants have noted that the Plaintiffs in this case are

corporations "with no pleaded political affiliations or registrations;" the allegedly injured party,

Francis Potter, is not a plaintiff in this action; and the permit applicant was a non-party, Lunar

Pursuit.  (Dkt. No. 32-5, at 11).  Plaintiffs have failed to provide any caselaw support for a viable

First Amendment claim under these facts.  Moreover, as Defendants also note, Plaintiffs have not

alleged any "interactions with the defendants" indicating that the denial of the permit was

politically motivated.  (*Id.* at 11).  Plaintiffs have failed to plead facts sufficient to infer that

---

[7] Although Plaintiffs' papers in opposition to Defendants' motion to dismiss contain new factual allegations, "[f]actual allegations contained in legal briefs or memoranda are . . . treated as matters outside the pleading[s] for the purposes of Rule 12(b)."  *See Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988); *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 285 (S.D.N.Y. 2015) (declining to "consider the new factual assertions Plaintiffs make in their opposition papers").

Defendants' denial of Lunar Pursuit's application was in any way related to Francis Potter's political speech.  (*Id.* ¶ 28).  The Complaint alleges merely that Francis Potter was affiliated with the Republican Party, that the Defendants were affiliated with the Democratic Party, and that Lunar Pursuit's application was denied.  It does not, however, contain factual allegations sufficient to connect these facts.  Without more, the Complaint contains no factual allegations that plausibly support Plaintiff's claim that Defendants' denial of Lunar Pursuit's mass gathering application was motivated by or substantially caused by Francis Potter's First Amendment activities.  In short, the allegations contained within the Complaint "rest merely only labels [and] conclusions," and do not "raise a right to relief above the speculative level."  *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 U.S. Dist. LEXIS 155140, at *5, 2017 WL 4250513, at *2 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555).

Accordingly, Plaintiff has failed to adequately state a claim for First Amendment retaliation, and the claim must be dismissed.

### C.    Equal Protection

"The Equal Protection Clause requires that the government treat all similarly situated people alike."  *Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  "[T]he prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class."  *Id.*  But "[a] plaintiff who does not claim to be a member of a constitutionally protected class may bring an Equal Protection claim on one of two theories: selective enforcement or 'class of one.'"  *Missere v. Gross*, 826 F. Supp. 2d 542, 560 (S.D.N.Y. 2011); *see also Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011).  These two types of equal protection theories are "related, yet different."  *Cobb v. Pozzi*, 363 F.3d 89, 109 (2d Cir. 2003).

To establish a selective treatment claim, a plaintiff must show "(1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Harlen Assocs.*, 273 F.3d at 499 (quoting *LaTrieste Rest. & Cabaret v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994)). In contrast, a "class of one" theory does not depend on the plaintiff's assertion of an "impermissible reason" for their treatment. *Cobb*, 363 F.3d at 110. "Rather, . . . the plaintiffs can recover if they can show that they were treated differently from" others who were similarly situated, "and that there was 'no rational basis for the difference in treatment.'" *Id.* (quoting *Village of Willowbrook v. Olech*, 528 U.S. 564, 564 (2000)); *see also Ruston v. Town Bd.*, 610 F.3d 55, 58 (2d Cir. 2010).

It is not clear from the amended complaint whether Plaintiffs rely on a selective treatment theory, premised on malice and bad faith intent, or a "class of one" theory. (*See* Dkt. No. 1, ¶ 44). Both parties, however, appear to address "class of one" analysis rather than selective treatment in their briefs regarding the motion for judgment on the pleadings. (*See* Dkt. No. 32-5, at 23–25; Dkt. No. 34-8, at 17–18). In any event, Plaintiffs' equal protection claim fails under either theory, because Plaintiffs have failed to allege any specific examples of other comparators, beyond their own prior applications for Camp Bisco.[8] To the extent that prior applications for the event could be used as "other comparators," the conclusory allegation that the 2015 application was "substantially similar," (Dkt. No. 1, ¶ 32), is insufficient to plausibly allege the claim. While Plaintiffs do provide some details alleging that the proposed insurance coverage

---

[8] The Court notes that neither party has addressed whether prior permit applications to hold Camp Bisco at the Indian Country Club can constitute "other comparators" for the purposes of equal protection analysis.

was deemed acceptable in prior years,[9] (*Id.* ¶ 33), and that there was previously "no requirement" for fifty police officers, there are insufficient facts alleged to state a plausible claim that applications by another promoter in other years have the extremely high degree of similarity required. *See Ruston*, 610 F.3d at 59–60. For example, the 2015 application was from a new promotor, Lunar Pursuit, and the complaint is silent as to any similarly between the new promotor and the prior promoter. [10] Thus, the Complaint is devoid of facts that would allow a plausible inference that "other similarly situated individuals" were treated differently. Accordingly, the claim will be dismissed.

### D.    Official Capacity Claim Against Defendant Frame

Defendants move to dismiss Plaintiffs' claims against Defendant Frame in his official capacity. (Dkt. No. 32-5, at 25). "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (quoting *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 691 n.55 (1978)). "It is not a suit against the official personally, for the real party in interest is the entity." *Id.* Here, Plaintiff's official capacity claims against Defendant Frame must be dismissed as duplicative since the real party in interest is Schenectady County, against whom Plaintiffs have also brought suit. *See Kennedy v. City of Albany*, No. 15 Civ. 491, 2015 U.S. Dist. LEXIS 143568, at *12, 2015 WL 6394513, at *5 (N.D.N.Y. Oct. 22, 2015) (dismissing official capacity claims and noting that "[a]

---

[9] The Court notes that Defendants assert that litigation involving Schenectady County that occurred after the approval of the prior applications warranted the increased insurance requirement in 2015. *See Bynum v. Camp Bisco*, No. 001798/2013 (Sup. Ct. Schenectady Co. 2013); *Popolizio v. Cnty. of Schenectady*, 62 A.D.3d 1181, 1184–85 (3d Dep't 2009).

[10] *See Lunar Pursuit, LLC v. Frame*, No. 2015-1278, slip op. at 2 (N.Y. Sup. Ct. Schenectady Cnty. Oct. 28, 2015) (citing the denial letter, which included, as one of the grounds, Lunar Pursuit's failure "to demonstrate it has the financial resources to execute its gathering plan").

claim against officers in their official capacity is essentially a claim against the city"). To the extent that Plaintiff brings any claims against Defendant Frame in his official capacity, the Court finds that they are duplicative, and they are accordingly dismissed.

      **E.**    **State Law**

      Having found that all of Plaintiffs' federal claims against all Defendants are subject to dismissal, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction over [pendent state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). Accordingly, Plaintiffs' state-law claims against Defendants are dismissed.[11]

## V.    LEAVE TO AMEND

      Defendants seek dismissal of the Complaint with prejudice. (Dkt. No. 32-1, at 12). In general, "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the

---

[11] The Court notes that Defendants have also moved for judgment on the pleadings on the basis that several of the claims are barred by collateral estoppel, and Plaintiffs have opposed that motion. With respect to Defendants' argument that collateral estoppel bars Plaintiffs' equal protection claim, it is not clear to the Court that a state-court determination of rationality with respect to the 2015 permit denial would necessarily preclude an equal protection claim if there were in fact other comparators meeting the requisite "extremely high degree of similarity," *Ruston*, 610 F.3d at 59–60, whose applications had been granted. Defendants have not cited caselaw supporting dismissal of the equal protection claims under these facts, and in light of the Court's other rulings, the Court need not reach that issue now. Additionally, the Court notes that Plaintiffs have failed to address Defendants' collateral estoppel argument regarding Plaintiffs' state law claim. Plaintiffs have failed to provide any defense to Defendants' argument that collateral estoppel precludes Plaintiffs from relitigating their state law claim that the Defendants' actions were arbitrary and capricious, in violation of New York law.

complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *see also* Fed. R. Civ.

P. 15(a)(2) ("The court should freely give leave when justice so requires."). Here, Plaintiffs have

not sought leave to amend. Nonetheless, the Court will permit them a limited opportunity to do

so, as set forth below. The shortcomings in Plaintiff's due process claims, however, are

substantive and cannot be remedied by better pleading—accordingly, leave to amend those

claims is denied. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## VI.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion for judgment on the pleadings (Dkt. No. 32) is

**GRANTED**; and it is further

**ORDERED** that the official capacity claim against Defendant John J. Frame is

**DISMISSED with prejudice**; and it is further

**ORDERED** that Plaintiffs' due process claims are **DISMISSED with prejudice**;

**ORDERED** that Plaintiffs' First Amendment retaliation, equal protection, and state law

claims are **DISMISSED without prejudice**; and it is further

**ORDERED** that Plaintiffs **may amend the Complaint** with respect to their First

Amendment retaliation and equal protection claims **within THIRTY (30) days** of the date of

this Order, in accordance with the conclusions stated above; and it is further

**ORDERED** that if Plaintiffs fail to file a proposed amended complaint within thirty (30)

days of the date of this Order, the Clerk is directed to close this case.

**IT IS SO ORDERED.**

Dated: February 16, 2018
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge