UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

INDIAN LOOKOUT COUNTRY CLUB, INC.; HARLEY
RENDEZVOUS CLASSIC, INC.; and FRANCIS H.
POTTER, JR., individually and as President of Indian
Lookout Country Club, Inc. and Harley Rendezvous
Classic, Inc.,

                                                       1:16-cv-00827 (BKS/DJS)

                            Plaintiffs,

v.

JOHN J. FRAME, individually; and the COUNTY OF
SCHENECTADY,

                            Defendants.
_____

**Appearances:**

*For Plaintiffs*:
Matthew J. Kelly
Roemer Wallens Gold & Mineaux, LLP
13 Columbia Circle
Albany, NY 12203

*For Defendants*:
Steven V. DeBraccio
Patrick J. Saccocio
Parisi, Coan & Saccocio, PLLC
376 Broadway
Schenectady, NY 12305

**Hon. Brenda K. Sannes, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

       Plaintiffs Francis H. Potter, Jr., Indian Lookout Country Club, Inc., and Harley

Rendezvous Classic, Inc., bring this action alleging claims under 42 U.S.C. § 1983 and seeking

permanent injunctive relief against Defendants John J. Frame, Director of the Schenectady

County Public Health Services Environmental Health Unit, and the County of Schenectady. (Dkt. No. 48). Plaintiffs allege that Defendants retaliated against Plaintiff Potter for exercise of his First Amendment right to free speech and deprived him of his Fourteenth Amendment right to equal protection when they denied the 2015 application of non-party Lunar Pursuit, LLC ("Lunar Pursuit") for a mass-gathering permit to hold a music festival, known as "Camp Bisco," on Plaintiffs' property in Duanesburg, New York. (*Id.* ¶¶ 42–49). After this Court dismissed the original Complaint on February 16, 2018 with leave to amend, (Dkt. No. 47), Plaintiffs filed an Amended Complaint on March 12, 2018, (Dkt. No. 48), and Defendants have again moved to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(6), (Dkt. No. 51).[1] Plaintiffs oppose the motion. (Dkt. No. 52). For the following reasons, Defendants' motion is granted.

## II. BACKGROUND

The Court presumes familiarity with its February 16, 2018 decision, which recites the factual background of this case. (*See* Dkt. No. 47, at 2–5). To the extent that the Amended Complaint adds relevant factual allegations, the Court addresses any such additional facts in the course of discussing the parties' arguments below.

## III. STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain

---

[1] Defendants indicate they seek dismissal of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) and "move for judgment on the pleadings based on [Plaintiffs'] failure to state a claim." (Dkt. No. 51-5, at 6). As Defendants have not answered the Amended Complaint, the Court construes the motion as a Rule 12(b)(6) motion to dismiss.

detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Communs, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). When deciding a motion to dismiss, a court's review is ordinarily limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

The Court notes that Plaintiffs have attached several extraneous documents to their response in opposition to Defendants' motion, mostly in the form of letters from various Schenectady County officials pertaining to Defendants' denial of Lunar Pursuit's application. (*See* Dkt. Nos. 52-1, 52-2, 52-3, 52-4, 52-5, 52-6, 52-7, 52-8, 52-9).[2] "Courts in this Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 122–23 (S.D.N.Y. 2010). Such evidence, however, may be considered even if it is not attached to the complaint if it is "incorporated in it by

---

[2] Plaintiffs also attached number of documents to the Amended Complaint, (Dkt. Nos. 48-1, 48-2, 48-3, 48-4, 48-5), which the Court has reviewed and considered in deciding Defendants' motion.

reference" or where "the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (quoting *Int'l Audiotext Network Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). "[L]imited quotation" of materials not attached to the complaint "does not constitute incorporation by reference." *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985). "'"[D]ocuments are 'integral' to the complaint when they are 'integral to [plaintiff's] ability to pursue his cause of action' or where the 'complaint relie[d] heavily upon its terms and effect.'" *Sobon v. Horizon Eng'g Assocs.*, LLP, No. 13-cv-1431, 2014 WL 4889340, at *7, 2014 U.S. Dist. LEXIS 138093, at *20 (N.D.N.Y. Sept. 30, 2014) (alterations in original) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).

Here, the only extraneous evidence that is arguably incorporated by reference into or "integral" to the Amended Complaint is Defendant Frame's April 8, 2015 letter to Lunar Pursuit denying its application for a mass-gathering permit. (Dkt. No. 52-1, at 2–3). Accordingly, because the denial letter gave rise to the substance of Plaintiff's claims, the Court has reviewed and considered the document. *Chambers*, 282 F.3d at 153. The only other material attached to Plaintiffs' opposition papers potentially relevant to deciding the motion consists of internal correspondence between Schenectady County officials and Defendant Frame, (Dkt. Nos. 52-2, 52-3, 52-4, 52-5), and an April 29, 2015 letter from Schenectady County Attorney Christopher Gardner, (Dkt. No. 52-8), that postdates Defendants' denial of the mass-gathering permit application. Plaintiffs' argument that the letters or their contents were "either directly referred to in the Amended Complaint or were integral to the same," (Dkt. No. 52, ¶¶ 12–13), is inaccurate. The Amended Complaint contains no reference to these letters, direct or otherwise, and they are not integral to the Plaintiffs' ability to pursue their Equal Protection and First Amendment

4

claims. Nor is there any indication that Plaintiffs "relie[d] heavily upon [the letters'] terms and effect" in framing the Amended Complaint. *Chambers*, 282 F.3d at 153; *see Madu, Edozie & Madu, P.C.*, 265 F.R.D. at 124. Accordingly, the Court has not considered these documents, (Dkt. Nos. 52-2, 52-3, 52-4, 52-5, 52-8), in deciding Defendants' motion, and declines to exercise its discretion under Federal Rule of Civil Procedure 12(d) to convert the motion to one for summary judgment.

## IV. DISCUSSION

### A. First Amendment Retaliation

Plaintiffs allege that Defendants denied Lunar Pursuit's mass-gathering permit application "to punish" Plaintiff Francis Potter in retaliation for his "long-standing and well-acknowledged public actions on behalf of the Republican Party in the County of Schenectady." (Dkt. No. 48, ¶ 39). Defendants argue that Plaintiffs' claim fails because the facts alleged in the Amended Complaint "do nothing to advance a plausible claim that the mass gathering permit application was denied as a part of a scheme to retaliate against him due to his past or current political activities." (Dkt. No. 32-5, at 11). The Court agrees.

"To show retaliation in violation of the First Amendment, a 'plaintiff must prove: (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right.'" *Mental Disability Law Clinic, Touro Law Ctr. v. Hogan*, 519 F. App'x 714, 717 (2d Cir. 2013) (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)). "Chilled speech, however, is not necessary if the plaintiff can establish that he suffered some other 'concrete harm.'" *C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 3d 307, 314 (E.D.N.Y. 2016) (quoting *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013)).

Plaintiffs' First Amendment retaliation claim rests on the allegation that Defendants' decision to deny Lunar Pursuit's application for a mass-gathering permit was motivated by Defendants' "intent to retaliate against Francis Potter and his business interests due to his years of service in support of the Republican Party and the values incorporated therein." (Dkt. No. 48, ¶ 48).[3] As factual support for his claim, the Amended Complaint states that Potter, who "has been a registered member of the Republican Party for decades," was involved in the Schenectady County government between 1994 and 2005 in various roles, including Chairman of the Schenectady County Legislature, Director of the Schenectady County Soil and Water Conservation District, and as a member of the Council on Consumer Affairs for the County of Schenectady. (*Id.* ¶¶ 28–32). Plaintiffs allege that, "[c]oncurrent to the time that he held these positions," Christopher Gardner, "the current County Attorney for Schenectady County, was Chairman of the Schenectady County Democratic Party." (*Id.* ¶ 33). Plaintiffs allege that Potter and Mr. Gardner "had frequent dealings with each other at this time, which ranged from polite to hostile"; during these "more hostile occasions, Mr. Gardner confronted [Potter] with threats of politically motivated retaliation." (*Id.* ¶ 34). Plaintiffs allege that Schenectady County Sherriff Dominic Dagostino, who was "endorsed by the Schenectady County Democratic Committee," and Tom Yuille, "a member of the Democratic Party," recommended that Lunar Pursuit's application be denied. (*Id.* ¶¶ 36–37). Plaintiffs conclude that, because the "County of Schenectady is operated by members of the Democratic Party," Defendants "sought to injure the plaintiff corporations" and "deny [Potter] his First Amendment rights." (*Id.* ¶ 40).[4]

---

[3] Plaintiffs do not allege that the denial of Lunar Pursuit's permit was based upon the content of the speech to be expressed at the mass gathering. *Cf. Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 193 (2d Cir. 2006) (noting that the "application of a facially neutral law so as to discriminate against certain speakers or ideas violate[s] the First Amendment").

[4] The Court notes that Plaintiffs' papers in opposition to Defendants' motion to dismiss contain new factual allegations not stated in the Amended Complaint. However, such "[f]actual allegations contained in legal briefs or memoranda

These allegations, which are assumed to be true, fail to plausibly link Defendants' denial of Lunar Pursuit's mass-gathering permit application to Potter's political activity. The Amended Complaint alleges that Francis Potter was affiliated with the Republican Party, that Defendant County of Schenectady is "operated" by individuals affiliated with the Democratic Party, that Defendants granted applications to hold Camp Bisco on Plaintiff's property in 2008, 2009, 2010, 2011, 2012, and 2013, but that in 2015, Defendant's denied Lunar Pursuit's application. Although Plaintiffs allege that Christopher Gardner made "threats of politically motivated retaliation" toward him at some point between 1994 and 2005, there are no allegations regarding Mr. Gardner's role, if any, in Defendants' decision to deny Lunar Pursuit's application in 2015. There are no allegations from which Mr. Gardner's alleged threats might be chronologically tied to the 2015 denial of Lunar Pursuit's application. And, aside from political affiliation, there are no facts from which to infer any retaliatory motivation on the part of any of the individuals alleged to have been involved in the decision to deny Lunar Pursuit's permit. Although "[i]t is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred" through circumstantial evidence, *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002), Plaintiffs have failed to allege such facts. Without more, the allegations in the Amended Complaint fail to plausibly support Plaintiffs' claim that Defendants' denial of Lunar Pursuit's mass gathering application was motivated by or substantially caused by Potter's First Amendment activities. In short, the allegations contained within the Amended Complaint "rest merely only labels [and] conclusions," and do not "raise a right to relief above the speculative level." *Lawtone-Bowles v. City of New York*, No. 16-cv-

---

are . . . treated as matters outside the pleading[s] for the purposes of Rule 12(b)." *See Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988); *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 285 (S.D.N.Y. 2015) (declining to "consider the new factual assertions Plaintiffs make in their opposition papers"). Accordingly, the Court need not address those allegations here.

4240, 2017 U.S. Dist. LEXIS 155140, at *5, 2017 WL 4250513, at *2 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555).[5]

Accordingly, the Amended Complaint fails to state a claim for First Amendment retaliation, and the claim must be dismissed.

### B. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment "requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "[T]he prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class." *Id.* Where a plaintiff does not allege membership in a protected class or group, they may nevertheless seek equal protection by alleging that either that they were discriminated against as "class of one" or that the laws were selectively enforced against them for impermissible reasons. *Missere v. Gross*, 826 F. Supp. 2d 542, 560 (S.D.N.Y. 2011); *see also Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011). These two types of equal protection theories are "related, yet different." *Cobb v. Pozzi*, 363 F.3d 89, 109 (2d Cir. 2003).

To state a "class-of-one" equal protection claim, a plaintiff must plausibly allege that they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To prevail on such a claim a plaintiff "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Progressive Credit*

---

[5] The parties have not briefed whether the Plaintiffs can, based on their alleged third-party beneficiary status, bring First Amendment and Equal Protection claims arising out of the denial of a permit to a third party. Accordingly, the Court does not address that issue here. Even assuming that there is such a right, Plaintiffs' claims fail for the reasons discussed.

8

*Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)). A plaintiff must be "prima facie identical" to the comparators because this comparison provides an inference that the difference in treatment "lack[s] any reasonable nexus with a legitimate governmental policy." *Id.* (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *overruled on other grounds*, *Appel v. Spiridon*, 531 F.3d 138, 140 (2d Cir. 2008)).

On the other hand, to state an equal protection claim under a selective enforcement theory, a plaintiff must allege: (i) that they were "treated differently from other similarly situated individuals"; and (ii) "that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Harlen Assocs.*, 273 F.3d at 499 (internal quotation marks omitted). Although both claims require a showing that a plaintiff was treated differently than similarly situated comparators, "there is some disagreement" within the Circuit regarding whether the extremely high level of similarity required for a class-of-one claim also applies to a selective enforcement claim. *Mancuso v. Village of Pelham*, No. 15-cv-7895, 2016 WL 5660273, at *13, 2016 U.S. Dist. LEXIS 134788, at *40 (S.D.N.Y. Sept. 29, 2016) ("While some courts evaluate whether a comparator is similarly situated under the same standard used in 'class of one' equal protection claims, others apply a less demanding standard to selective enforcement claims." (citations omitted)).[6] Since a selective enforcement claim is based upon a showing of impermissible considerations and not on an inference of irrationality from the disparate treatment of identically-situated persons, many courts have required a less demanding standard of

---

[6] The Second Circuit has not ruled on whether the standard of similarity for a class-of-one claim applies to a selective enforcement claim. *33 Seminary LLC v. The City of Binghamton*, 670 Fed. App'x 727, 730 (2d Cir. 2016) (summary order).

9

similarity in selective enforcement cases. *See, e.g.*, *AYDM Assocs., LLC v. Town of Pamelia*, 205 F. Supp. 3d 252, 265 (N.D.N.Y. 2016) (ruling that, in a selective enforcement claim, "[t]he test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. . . . Exact correlation is neither likely or necessary, but the cases must be fair congeners"), *aff'd*, 692 F. App'x 78 (2d Cir. 2017); *Mosdos Chofetz Chaim, Inc.*, 815 F. Supp. 2d at 696 (stating that, under the "less-demanding test in the selective enforcement context, plaintiffs must identify comparators whom a prudent person would think were roughly equivalent[, but] [p]laintiff[s] need not show an exact correlation between [themselves] and the comparators" (alternations in original) (internal quotation marks omitted)).

In any event, under either standard, Plaintiffs' equal protection claim fails because they have failed to plausibly allege that Lunar Pursuit was similarly situated to previous promoters who received permits.[7] The Amended Complaint fails to allege *any* similarities between Lunar Pursuit, and the prior promoters. There are no allegations, for example, regarding the financial resources of Lunar Pursuit or the prior promoters, and one of the bases of the County's denial was Lunar Pursuit's failure "to demonstrate that [it] has the financial resources to execute the submitted plans." (Dkt. No. 52-1). Plaintiffs conclusorily allege that the "prior applications included many highly similar, and in some cases essentially identical components." (Dkt. No. 48, ¶ 44). But, with respect to the specific similarities alleged—i.e., the plan for an internal security force and the proposed insurance coverage—the Amended Complaint does not allege facts plausibly suggesting how the *circumstances* that warranted the particular insurance coverage and

---

[7] Neither the Amended Complaint, (Dkt. No. 48), nor Plaintiff's opposition to Defendants' motion to dismiss, (Dkt. No. 52-10), indicates whether Plaintiff's equal protection claim is premised on a class-of-one or a selective enforcement theory.

10

security measures implemented in the past were sufficiently similar to those surrounding Camp Bisco in 2015, as required to adequately state an equal protection claim under either a selective enforcement or class-of-one theory. Indeed, the denial letter itself states that Lunar Pursuit's insurance proposal was not sufficient "to protect the County's interest in light of the significant hazards and risks associated with this event," and that Lunar Pursuit's security plan "failed to provide an adequate method to prevent the use of dangerous drugs at Camp Bisco." (Dkt. No. 52-1). Accordingly, Plaintiffs' equal protection claim must be dismissed.

## V. CONCLUSION

For these reasons it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 51) is **GRANTED**; and it is further

**ORDERED** that the Amended Complaint (Dkt. No. 48) is **DISMISSED with prejudice**.[8]

**IT IS SO ORDERED.**

Dated: October 31, 2018
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

---

[8] Plaintiffs have not requested leave to amend his pleading. Moreover, the Court has already afforded Plaintiffs an opportunity to amend. In these circumstances, the Court finds that justice does not require permitting Plaintiffs to amend again. *See* Fed. R. Civ. P. 15(a)(2). For these reasons, the Court dismisses the specified claims with prejudice.